STEWART DOWLER, Appellant, v. MADISON COUNTY et al., Appellees.

**APPEAL AND ERROR:** Review—Scope and Extent—Trial De Novo
1 —Opening Highway. An action in equity to enjoin the board of supervisors and the auditor of a county from opening a highway through plaintiff's land without paying compensation therefor is triable *de novo* on appeal.

**HIGHWAYS:** Establishment—Damages. Evidence reviewed, and
2 held, in an action to enjoin the board of supervisors and auditor of a county from opening a highway through plaintiff's land without paying him compensation, that the plaintiff, through his attorney, filed a claim for damages therefor with the county auditor.

**EMINENT DOMAIN:** Compensation—Establishing Highway. Where
3 ′ a landowner, through whose land a highway was laid out, filed claim for compensation, or damages with the county auditor, and the matter was not presented to the board, and damages were never allowed or refused, the failure of the board of supervisors to allow the damages was not a matter from which the landowner should have appealed, as there was nothing to appeal from.

*Appeal from Madison District Court.*—J. H. APPLEGATE, Judge.

JULY 2; 1919.

ACTION in equity, to enjoin the board of supervisors and the auditor from opening a highway through plaintiff's farm, without paying him compensation for the land taken therefor. The facts are more fully stated in the opinion. The trial court found against the plaintiff, and he appeals. —*Reversed.*

*J. P. Steele* and *Stipp, Perry, Bannister & Starzinger,* for appellant.

*Phil R. Wilkinson* and *W. L. Cooper,* for appellees.

PRESTON, J.—The petition alleged that plaintiff was a landowner in Madison County; that the board had passed a resolution establishing a road through his land, which would damage the plaintiff's farm in the sum of $2,000; that the board had refused to consider plaintiff's claim for that amount; that plaintiff had been paid no compensation, and that it was not proposed to pay any; that his property was being taken without complying with the statute, and without making any compensation; that the description of the road was insufficient, and too indefinite and uncertain upon which to base a valid order opening a road. The answer was a general denial. Plaintiff's claim was not presented to the board by the auditor, the auditor claiming that it had never been filed. After plaintiff discovered that the auditor had not presented his claim, plaintiff presented to the board what he calls a petition for rehearing, asking the board to find that the claim had been filed, and to consider the same, and to allow him the amount that he was entitled to as damages. This the board refused to do, and he took appeal from this order and from the action of the board establishing a road. He also filed his petition in equity in this case, asking a writ of mandamus commanding the board to file and allow his claim, and that, meanwhile, the opening and establishing of the road be enjoined. The trial court decided against plaintiff, and dismissed plaintiff's petition, denied plaintiff any relief, and then dissolved the injunction against the defendants. An application was made in this court, and the injunction was continued in force, pending the submission and decision of this appeal.

The issues raised at the trial and presented to the court

which appellant now relies upon for a reversal are: First, was the claim for damages of the plaintiff filed with the auditor? Second, was the description in the order establishing the road sufficiently definite to accurately locate the same, and upon which to base a valid location thereof?

The principal controversy in the case is as to whether plaintiff's claim for damages was filed with the auditor, as he claims. If it was, and the case is reversed here on that ground, and the board of supervisors are directed to treat plaintiff's claim as having been filed at the time he claims, then, as we understand the record, the plaintiff can be heard as to all the claim he is now relying on, which, we suppose, is the allowance of his damages, if any. Possibly, the claim as to the insufficiency of the description is raised in this case, claiming that the establishment of the road is void, as an additional ground, in case plaintiff should fail as to the first ground, on the theory that the parties seeking the establishment of the road would have to begin over, and in that case, plaintiff would be heard as to his damages. At any rate, we do not feel called upon to determine the question as to the sufficiency of the petition. It is not claimed that any remonstrance was filed; so that we shall pass upon the first proposition. Appellant contends that his claim was filed with the county auditor, but this is denied by the defendants. If it was filed, as claimed by plaintiff, then there is no question that it was filed within the proper time after notice was served upon plaintiff, fixing the time for hearing claims for damages, and if it was filed, as contended by plaintiff, it was before the hearing. Plaintiff's claim was not presented to the board. On defendants' theory that it was not filed, of course it could not be presented. Appellees contend, as already stated, that the claim was not filed, and that the failure to file it was from the negligence of plaintiff and his attorney; and they say further that, if the claim was filed, the plaintiff's remedy was

by appeal to the district court from the failure to allow him damages. Appellees concede that plaintiff intended to file a claim for damages, and that he employed an attorney for that purpose. Appellees further concede that it was not necessary, to constitute a filing, that the claim should be marked filed, or the filing entered upon any book. In other words, they concede that, if the claim was deposited with the auditor, as contended by plaintiff, this was sufficient. We have this proposition, then: Plaintiff has the burden. There is one witness testifying affirmatively and positively, of his personal knowledge, that he did personally present and file the claim. On the other hand, we have one witness testifying negatively, that the claim was not filed. Both appear to be men of character and standing, and it is not claimed otherwise. Neither are interested, or at least are equally interested, if interested at all. Perhaps the attorney might be censured if he neglected to file the claim, after plaintiff had entrusted the filing of it with him; and on the other hand, the auditor might feel that he would be censured for neglecting to file and preserve the claim if it was filed. Ordinarily, one witness opposed by another of equal credibility, and of equal character, standing, intelligence, etc., would leave the matter in dispute in equipoise; but it does not follow that this is always the case. Of course, either of these witnesses might be mistaken, and one of them must be. It cannot be said, to be sure, that the proposition is proved, or established to a certainty. This is not necessary. The question is, What are the probabilities? Which story is the more probable? If there is a greater probability on the one side than the other, this would be a preponderance. We think the equities are with the plaintiff. Doubtless, this fact ought not to influence the court. A determination of the question presented here does not pass upon the merits of the controversy, but decides only whether plaintiff shall be given a hearing. Under the circumstances, the evidence

of both should be carefully scrutinized and weighed.    Mr.
Tidrick, a practicing attorney of 20 years' standing, and hav-
ing an office with John A. and W. T. Guiher, testified for
plaintiff as to his filing the claim.    His testimony, in so far
as it relates to that matter, is:

"I remember when Mr. Dowler came to me with refer-
ence to preparing and filing a claim for damages.    I talked
it over with him.    When we talked about a remonstrance, I
told him to get it up and bring it in, and we would pre-
pare his claim for damages and file it.    He was in twice.
The day before he came in, I began to be a little afraid he
was not going to get in, and I prepared a claim and signed
it John A. & W. T. Guiher, attorneys for Mr. Dowler, and
put it and other papers in an envelope, and marked it with
Mr. Dowler's name, and put it in the safe.    I thought if he
did not get in within a few days, I would file the claim with
the auditor; but he came in on Friday, and I made a copy
of the other claim, prepared it, and had Mr. Dowler sign
it.    He then brought in the remonstrance, and I put it and
the claim and some memoranda back in the envelope, and
put the claim Mr. Dowler had signed aside on the desk to
submit to Mr. Guiher.    I had never had any experience in
such business in my practice, and I laid it aside to submit
to Mr. Guiher after he came home that evening.    He did not
come.    I prepared a claim for another party, named Walker.
There was some talk about filing plaintiff's claim, and I
believe he said if I would give them to him he would take
them over and file them; but I told him, 'Never mind,' I
would file them.    My reason for that was I wanted to sub-
mit the claim to Mr. Guiher if he came home that evening.
Either that evening or the next morning, and I think prob-
ably the next morning, I brought it over and gave it to the
auditor to file.    I gave it to the auditor in the auditor's of-
fice in the courthouse.    When I handed him the claim, my
recollection of it was at the time the matter was next called

to my attention, and still is, that he was standing about the middle of the counter, and turned and started back towards the vault, and I went out the door."

Witness then proceeds to testify as to why he did not file the remonstrance at that time, and why he thought it would be better to file it at the time of the hearing. This is not very material now. Witness continues:

"This matter of the claim for damages was next called to my attention at the September term of court, when Mr. Dowler asked me, 'Why didn't you file that claim for damages?' and I said, 'I did file it.' "

Witness details searches made in his office and the auditor's office, but the paper was not found at either place; also testifies to the copy of the claim he had made, and its use later in the application for rehearing, before the board. He says further:

"I did not file the Walker claim because the road that is being vacated leaves his farm without any road; and in the meantime, I had looked up the law, and concluded that Walker had no right to claim damages."

Mr. Norman, the auditor, says he had been in the auditor's office five years, as auditor and deputy. He testifies to the different papers that were filed in the proceedings in controversy, the petition, commission, etc., and that no claim for damages was ever filed in his office, with reference to the establishing of the road.

"Q. Was any claim for damages ever given to you or handed to you in connection with the establishment of that road? A. No, sir. Q. Did J. E. Tidrick or anyone else ever file in your office or give to you or hand to you, prior to the time the order establishing the road was made, any claim for damages on behalf of Stewart Dowler or any other person? A. No, sir, there was none. Q. Did you ever see in your office any claim for damages made by Stewart Dowler in connection with the establishment of that road? A.

No, sir, not until that remonstrance was filed with me. I first saw Exhibits 1 and 2, I believe, when Mr. Steele filed them. I believe I attached the exhibits together after he handed them to me. All of these papers were handed to me at the same time by Mr. Steele. Q. Did you ever see or have in your possession any claim for damages made on behalf of Stewart Dowler in connection with the establishment of that highway prior to the time Mr. Steele handed you Exhibit 2? A. No. sir."

He testifies further about Mr. Tidrick and Mr. Dowler's coming into the office later, and their looking in the vault where the claim might be, and says that Mr. Dowler hadn't been in there before that time, and gives as a reason for saying that no claim for damages was filed on behalf of plaintiff, that the board asked him, at different times, if any claims had been filed, and different persons, at different times, had made the same inquiry. It will be observed that Mr. Norman does not specifically controvert some of the precise statements made by Mr. Tidrick, for instance, as to where the auditor was standing—near the middle of the counter, etc.; but his denials are more general, although perhaps it was intended to be specific. We have set out the exact language. We feel safe in saying that, as a rule, a filing officer, like the clerk of courts or a county auditor, relies more on his filing mark or the entry on some book than upon his memory. The auditor, in the five years he was in the auditor's office, doubtless filed a great many papers, and doubtless without any examination or attention to the contents. Mr. Tidrick, inexperienced in road cases, had dealt with such papers less frequently, and papers are filed by an attorney in the auditor's office infrequently, much less than in the clerk's office. Mr. Tidrick had prepared this paper himself, and made a copy of it,—to some extent, an unusual transaction with him,—and it was prepared with the intention of filing it. There was some anx-

iety on his part lest Mr. Dowler should not come in in time to file it, but he did. There was the thought, too, that, because of his inexperience, he desired to submit the claim, or the form of it, to Mr. Guiher. These circumstances indicate that the matter was being given attention, and was fixed to some extent in Mr. Tidrick's thought. As said, it is possible for either of these parties to be mistaken, but which is the more likely to be? Mr. Tidrick would be testifying to an untruth, unless he did the thing he says he did, or honestly believed so. On the other hand, if the paper had been filed, as plaintiff claims, and the claim had been placed in the wrong envelope or box in the auditor's office, or mislaid or forgotten, Mr. Norman could testify, with honesty of purpose, that it had not been filed. The mind is capable of receiving an impression of things it perceives. What one sees or hears or does, may probably make some impression on the mind, but often the impression is so slight that all trace of it is soon gone. The mind is attentive to what it sees or hears, more or less, according to circumstances. One man may pass another, and in passing see him, and yet the sight of him may make little impression on the mind, as to features, dress, etc. But if he look at him purposely to inform himself as to these things, then the impression will be deeper. Things happening which are out of the ordinary, such as an unusual gait, manner, or dress of a person, excites notice; or an unusual sight or sound, as of a wounded man, or a shriek. And in this case, as said, Mr. Tidrick seems to have had his mind centered beforehand on this transaction and the preparation and filing of it, and his anxiety in regard to the form, and whether it would be filed in time. There was nothing unusual, so far as Mr. Norman is concerned,—at least not before the alleged filing. Other reasons may readily occur to show why, without disparaging Mr. Norman or his testimony, the weight and preponderance of the testimony is with

1. APPEAL AND ERROR: review: scope and extent: trial de novo: opening highway.

the plaintiff as to this transaction. We so hold. The case is triable *de novo*. We have a responsibility in the matter, ourselves. The case is somewhat out of the ordinary.

It is argued by appellees that plaintiff's damages are trifling. There is a conflict in the testimony as to this, and it may be, as contended by appellant, that defendants' witnesses took matters into consideration which they were not entitled to. Plaintiff's testimony tends to show substantial damages in the taking of the land, rebuilding of fences, etc. But since we hold that the claim was filed, the matter will now be heard, and the question as to damages ought to be passed upon by the board of supervisors.

2. HIGHWAYS: establishment: damages.

Appellees also argue that, if the claim was filed, the failure to allow damages was a matter from which plaintiff should have appealed. But we think there is no merit in this claim. There was nothing to appeal from. The matter was not presented to the board, and damages were neither allowed nor refused. Had an appeal been taken, it would have been necessary for the defendants to have certified the proceedings in regard to this, and in that case there would be nothing to certify, according to the view of the board. The board would simply say and claim, as they were then claiming and as they do now, that no claim was filed. After a careful consideration of the case, our conclusion is that the trial court erred in not finding that the claim was filed. The cause is reversed as to this point, with directions to issue a mandamus to the board of supervisors, directing them to file, and to consider as filed, the plaintiff's claim, and as of the date given by Mr. Tidrick, and to restore the injunction, which will remain in force until the matter is heard and determined by the board of supervisors.—*Reversed.*

3. EMINENT DOMAIN: compensation: establishing highway.

LADD, C. J., EVANS and SALINGER, JJ., concur.